IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHNNY and SUSAN KORGAN,

        Plaintiffs,

v.                                                     Case No. 21-2567-JWB

ESTATE OF EARL E. HANSEN,
DECEASED, BY AND THROUGH
DANIEL W. CRAMER, SPECIAL
ADMINISTRATOR,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. 5.) The motion has been fully briefed and is ripe for decision. (Docs. 8, 9, 10, 11, 13, 22, 23.) For the reasons provided herein, Defendant's motion is DENIED.

**I.    Facts and Procedural History**

On October 19, 2019, Earl Hansen was driving a vehicle on Interstate 70 in Dickinson County, Kansas when he attempted to make a U-turn from the outside lane of the highway. Plaintiffs were driving in the inside lane at that time, and Plaintiffs and Hansen collided.

Plaintiffs brought this action for negligence against the Estate of Earl E. Hansen, Deceased, by and through Daniel W. Cramer, Special Administrator ("Defendant") on December 2, 2021. (Doc. 1.) Defendant moved to dismiss for failure to state a claim, arguing that Plaintiffs' claim was time-barred. (Doc. 5.)

On March 19, 2020, the chief justice of the Kansas Supreme Court issued Kansas Supreme Court Administrative Order 2020-PR-016.  (Doc. 11-1.)[1]  That order outlined the course of the COVID-19 pandemic at that time and took actions deemed necessary to protect the health and safety of court users, staff and judicial officers by restricting operations to emergency operations only and encouraging telework to the extent possible.  (*Id.*)  Additionally, it announced that "upon publication of 2020 House Substitute for Senate Bill No. 102, all statutes of limitations and statutory time standards or deadlines applying to the conduct or processing of judicial proceedings is suspended until further order."  (*Id.*)  That bill became K.S.A. § 20-172.  Statutes of limitation and deadlines continued to be extended or suspended until April 15, 2021, when Kansas Supreme Court Administrative Order 2021-PR-020, which was issued on March 30, 2021, lifted the suspension for most deadlines and time limitations.  (Doc. 11-2.)

## II.     Standard of Review

To withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiffs.  *Id.*  Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The statute of limitations is an affirmative defense but may form the basis of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it is clear on the face of the complaint that the right to sue has expired.  *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

---

[1] The court takes judicial notice of Kansas Supreme Court Administrative Order 2020-PR-016 and Kansas Supreme Court Administrative Order 2021-PR-020 and considers them although they are not incorporated in Plaintiffs' complaint. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### III.    Analysis

Defendant argues that the applicable statute of limitations has run and that the Kansas Supreme Court did not toll the statute of limitations. Alternatively, Defendant argues that Kansas Supreme Court Administrative Order 2020-PR-016 and Kansas Supreme Court Administrative Order 2021-PR-020 violated the separation of powers doctrine and that this court should certify the question to the Kansas Supreme Court. Plaintiffs counter Defendant's arguments.

#### A. The Kansas Supreme Court's order and K.S.A. § 20-172 tolled deadlines and statutes of limitation.

In a diversity action such as this one, a federal court must apply the statute of limitations which would apply in state court. *Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 483–84 (10th Cir. 1990). The applicable statute of limitations for Plaintiffs' negligence claim is two years. K.S.A. § 60-513(a)(4). Because Plaintiffs' claim accrued on October 19, 2019, and the lawsuit was filed on December 2, 2021, it is untimely unless the statute of limitations was tolled.

First, the court observes that the administrative orders issued by the chief justice of the Kansas Supreme Court were explicitly authorized by the Kansas legislature. *See* K.S.A. § 20-172. The Kansas legislature gave the chief justice of the Kansas Supreme Court authority to "issue an order to extend or suspend any deadlines or time limitations established by statute . . . when the chief justice determines such action is necessary to secure the health and safety of court users, staff and judicial officers." K.S.A. § 20-172(a). This power is only in effect "during any state of disaster emergency pursuant to K.S.A. 48-924, and amendments thereto, or any state of local disaster emergency established by K.S.A. 48-932, and amendments thereto." *Id.* The Governor of Kansas first declared a state of emergency because of the pandemic on March 12, 2020. State of Disaster Emergency Proclamation, March 12, 2020, available at https://governor.kansas.gov/wp-content/uploads/2020/03/2020-03-12-Proclamation.pdf. That

state of emergency was lifted on June 15, 2021.[2] Executive Order 21-23, June 14, 2021, available at https://governor.kansas.gov/wp-content/uploads/2021/06/EO-21-23-Rescinding-Certain-Covid-19-EOs-Executed.pdf.

> 1. *The plain language of the statute indicates that statutes of limitations were tolled.*

Next, the court proceeds to the language of the statute. Defendant argues in its reply that deadlines and statutes of limitations were suspended during the duration of the administrative orders which means that the deadlines and statutes of limitations were temporarily paused. (Doc. 13.) Defendant argues that because deadlines were suspended rather than tolled, the suspension merely "delays the expiration of the time-period until the end of the suspension." (*Id.*) Accordingly, Defendant argues that only those statutes of limitation which would have expired between March 19, 2020 and April 15, 2021 were extended, and statutes of limitation which did not expire during that time period were left in place.

Defendant places much emphasis on the distinction between the word "suspend" and the word "toll" in the administrative orders and the statute. But that emphasis is misplaced. Defendant's argument is rejected by the plain language of K.S.A. § 20-172(d)(1): "on the date such order terminates, a person shall have the same number of days to comply with the deadline or time limitation as the person had when the deadline or time limitation was extended or suspended." The Kansas legislature even went a step further to clarify its intentions, adding in K.S.A. § 20-172(d)(2): "for a deadline or time limitation that did not begin to run because of an

---

[2] Governor Kelly instituted a second state of emergency due to COVID-19 on January 6, 2022. This second state of emergency does not impact this analysis, as it had no effect on statutes of limitation. State of Disaster Emergency Proclamation, January 6, 2022, available at https://governor.kansas.gov/wp-content/uploads/2022/01/Gov-Declaration-1.6.22-Executed.pdf.

order issued pursuant to subsection (a), on the date such order terminates, a person shall have the full period provided by law to comply with the deadline or time limitation."

By the plain language of the statute, it is clear that the Kansas legislature intended to toll statutes of limitation during a period of emergency as ordered by the chief justice of the Kansas Supreme Court. Because the language is unambiguous, there is no need to parse out what "extend or suspend" means. *Graham v. Dokter Trucking Grp.*, 284 Kan. 547, 554, 161 P.3d 695, 701 (2007) ("When a statute is plain and unambiguous, we must give effect to its express language, rather than determine what the law should or should not be. . . . If the statute's language is clear, there is no need to resort to statutory construction.").

2. *Other courts in this district have reached the same result.*

This court has recently addressed similar issues in at least three cases. *See Ortiz v. QuikTrip Corp.*, No. 21-2582-JAR-ADM, 2022 WL 1078437, at *6 (D. Kan. Apr. 11, 2022); *see also Tran v. Cnty. of Douglas*, No. 21-2310-KHV, 2021 WL 5505455, at *5–*6 (D. Kan. Nov. 24, 2021); *Fullen v. City of Salina*, No. 21-4010-JAR-TJJ, 2021 WL 4476780, at *7 (D. Kan. Sept. 30, 2021). In each case, the court reached the same result – the plaintiffs were entitled to additional time because the statutes of limitation were tolled in the early days of the COVID-19 pandemic. *See Ortiz*, 2022 WL 1078437, at *6; *see also Tran¸* 2021 WL 5505455, at *5–*6; *Fullen*, 2021 WL 4476780, at *7.

One of these cases is especially instructive here. In the *Ortiz* case, the plaintiff caught fire at a QuikTrip location while pumping gas on November 16, 2019. *Ortiz*, 2022 WL 1078437 at *1. On November 16, 2021,[3] the plaintiff filed his negligence claim in state court against several

---

[3] In the *Ortiz* case, it says "[t]he fire occurred on November 16, 2019, and Plaintiff filed his suit in Wyandotte County District Court on November 16, 2019, the last day of the two-year period." *Ortiz*, 2022 WL 1078437 at *6. Because the fire occurred in 2019, and because the court states the suit was filed on the last day of the two-year period, the court believes suit was filed on November 16, 2021, and the date in the case may be a typographical error.

5

QuikTrip entities and several John Doe defendants. *Id.* at *6. The defendants removed the case to federal court. *Id.* at *2. The plaintiff moved for an extension of time to serve the John Doe defendants, while the defendants contended that the statute of limitations had run, so additional time to serve the unidentified defendants was inappropriate. *Id.* at *5.

The court found that under Kansas law, a two-year statute of limitations applied to negligence claims. *Id.* at *6. The plaintiff filed his lawsuit on the last day of that two-year period, and "the inclusion of a John Doe in a complaint does not stop the statute of limitations from running." *Id.* (quoting *Dartez v. Peters*, No. 15-3255-EFM-DJW, 2018 WL 1138282, at *5 (D. Kan. Mar. 2, 2018)). Thus, the plaintiff's claim and service of the John Doe defendants would only be timely if the amendment related back to an earlier filing or if the statute of limitations had been tolled. *Id.* The court held that the statute of limitations had not run and that the plaintiff could file a timely amendment as a result of the Kansas Supreme Court's administrative orders which tolled the statute of limitations between March 19, 2020 and April 15, 2021. *Id.*

Likewise, the court in the *Tran* case found that the statute of limitations had been tolled by the Kansas Supreme Court during the pandemic, making the plaintiff's case timely. *Tran*, 2021 WL 5505455 at *6 (plaintiff's claims accrued on June 29, 2019 and otherwise would have been untimely when filed on July 16, 2021) (citing cases from other jurisdictions in which statutes of limitations were tolled).

Plaintiffs and Defendant both cite the *Fullen* case. In Plaintiffs' view, it is an example the court should follow in finding that the statute of limitations was tolled. (Doc. 11.) According to Defendant, *Fullen* is distinguishable from the case at hand because the statute of limitations in *Fullen* would have expired during the period between March 19, 2020 and April 15, 2021. (Doc. 13.)

6

The statute of limitations in *Fullen* ordinarily would have expired on April 18, 2020. *Fullen*, 2021 WL 4476780, at *7. Instead, the court found that "Kansas's tolling rules include[d] a toll of state statutes of limitations from March 19, 2020 through April 14, 2021." *Id.* at *8. Accordingly, the plaintiffs' claims, which were filed on January 4, 2021, were timely. *Id.* at *7–*8.

Defendant is correct in its assertion that "the statute of limitations that expired in *Fullen* expired during the period in which the Administrative Orders were in effect." (Doc. 13.) But this fact was not central to the court's decision – the court instead emphasized the importance of giving "plaintiffs 'ample time to pursue [their] claims during a global pandemic.'" *Fullen*, 2021 WL 4476780 at *8 (quoting *Bonilla v. City of New York*, No. 20-1704, 2020 WL 6637214, at *2 (E.D.N.Y. Nov. 12, 2020)).

> 3. *Defendant's reliance on Kansas case law and the imposition of a grace period are not persuasive.*

Defendant points to two Kansas cases as evidence that the administrative orders *suspended* deadlines. *See In re B.M.*, 494 P.3d 302, 2021 WL 4032897 at *7 (Kan. Ct. App. Sept. 3, 2021); *In re Marriage of Evans*, 482 P.3d 636, 2021 WL 1149385 at *6 (Kan. Ct. App. Mar. 26, 2021). But neither case analyzes the issue; instead, each case mirrors the language used in K.S.A. § 20-172.

Defendant also notes that there was a grace period provided before statutes of limitation went back into effect – Kansas Supreme Court Administrative Order 2021-PR-020 was filed on March 30, 2021, but did not become effective until April 15, 2021. (Doc. 13.) Defendant posits that the grace period is further evidence that the administrative orders were meant to implement a suspension rather than a toll. This is an interesting point, but ultimately, the text of the order provides the answer. Administrative Order 2021-PR-020 provided for a grace period before

deadlines began running again because the administrative orders applied to many types of deadlines, not just statutes of limitation. For example, in one of the cases Defendant cited, *In re B.M.*, the mother filed an appeal of the termination of her parental rights outside the 30-day deadline proscribed by statute, yet she was allowed to proceed because of the administrative order. *In re B.M.*, 2021 WL 4032897, at *7. A grace period was clearly necessary because individuals needed advance notice that all deadlines would begin to run, including shorter deadlines such as a 30-day period to appeal.

For these reasons, the court finds that the statute of limitations applicable here was tolled from March 19, 2020 through April 14, 2021. Because only five months passed between October 19, 2019 (when Plaintiffs' claim accrued) and March 19, 2020 (when tolling began), Plaintiffs still had 19 months left to file their claim when the tolling ended on April 15, 2021. Plaintiffs filed their claim on December 2, 2021, well within the statute of limitations after accounting for the tolling period.

### B. The administrative orders and K.S.A. § 20-172 do not violate the separation of powers doctrine.

In Defendant's reply, Defendant argues that the administrative orders are void because they violate "the separation of powers doctrine inherent in the Kansas Constitution" because the Kansas legislature impermissibly delegated legislative authority to the Kansas Supreme Court. (Doc. 13, at 7.) Defendant argues that the legislature has the exclusive power to amend statutes of limitation and that the Kansas Supreme Court improperly rewrote the statutes of limitation when it issued the administrative orders. Plaintiffs argue that this was a delegation of judicial (or administrative) power. Alternatively, Plaintiffs argue that even if there was a delegation of legislative power, it was constitutionally proper. Last, Plaintiffs argue that no matter how the power is construed, there is no significant interference with the legislative branch.

8

Defendant first brought this argument in its reply to Plaintiffs' response to Defendant's motion to dismiss.[4] (Doc. 13.)  This court ordinarily does not address arguments brought for the first time in a reply.  *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("arguments raised for the first time in a reply brief are generally deemed waived.").  Nevertheless, the court addresses Defendant's argument below.[5]

The separation of powers has been explained in this way:

> Each of the three branches of our government – the legislative, judicial, and executive branches – is given the powers and functions appropriate to it.  As the United States Supreme Court explained nearly 200 years ago: "The difference between the departments undoubtedly is, that the legislature makes, the executive executes, and the judiciary construes the law."

*State ex rel. Morrison*, 179 P.3d at 374  (further citation omitted).

The Kansas Supreme Court is vested with the judicial power by the Kansas Constitution. Kan. Const. art. 3, § 1.  The Kansas Constitution goes on to say that "[t]he supreme court shall have general administrative authority over all courts in this state."  *Id.*  General administrative authority over the courts "has been defined as the power 'to promulgate and enforce reasonable rules regulating judicial administration and court procedure as necessary for the administration of justice.'"  *Solomon v. State*, 303 Kan. 512, 527, 364 P.3d 536, 546 (2015) (quoting *State v. Mitchell*, 234 Kan. 185, 194, 672 P.2d 1, 8 (1983)).  This general administrative authority does not extend to tolling statutes of limitation.

---

[4] Plaintiffs were permitted to file a surreply addressing the arguments Defendant made in its reply.  (Doc. 22.)
[5] At least one other court has been called on to answer the same question posed here.  *See Murphy v. Liberty Mut. Ins. Co.*, 274 A.3d 412, 432 (Md. Apr. 27, 2022) ("The federal district court has asked whether the Chief Judge acted within her authority under Maryland law, including the Maryland Constitution, in issuing the administrative tolling order.").  That court held that the Maryland constitution had not been violated.  *Id.* at 439 ("The Court's adoption of rules providing for the tolling of the statute of limitations in the event of an emergency fell within the Court's constitutional authority to adopt rules of practice and procedure.  It is also evident that the tolling order itself did not usurp powers belonging solely to another branch.").  This court does not conclude that the actions of the chief justice of the Kansas Supreme Court effectively extending the limitations period fall within that court's authority to promulgate rules of practice and procedure for Kansas courts.

Plaintiffs argue that if the legislature delegated any power to the Kansas Supreme Court, it was judicial power, and therefore entirely proper. (Doc. 22.) This argument fails, although Plaintiffs' misapprehension on this point is understandable given the Kansas Supreme Court's confusing precedent regarding separation of powers. As a federal court sitting in diversity, this court is obliged to apply state law as interpreted by the state's highest court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."). However, Kansas has long recognized that

> the doctrine of separation of powers is an inherent and integral element of the republican form of government, and separation of powers, as an element of the republican form of government, is expressly guaranteed to the states by Article IV, Section 4 of the Constitution of the United States.

*VanSickle v. Shanahan*, 212 Kan. 426, 447, 511 P.2d 223, 241 (1973). And in reaching that conclusion, the Kansas Supreme Court relied heavily on separation of powers principles from the federal constitution, citing extensively from sources such as The Federalist Papers. *See, e.g., id.* at 439–47 (citing federal cases and passages from several of The Federalist Papers). Thus, in interpreting subsequent Kansas authority on this topic, the court concludes it is appropriate to do the same, particularly when necessary to avoid an interpretation that would be absurd in light of well-established principles of law on this topic.

In *Citizens' Utility Ratepayer Board v. State Corp. Commission of Kan.*, 264 Kan. 363, 396, 956 P.2d 685, 707 (1998), the Kansas Supreme Court correctly noted that "[l]egislative power is the power to make a law, as opposed to the power to enforce a law." However, the court then proceeded into a confusing explanation of the legislature's authority to delegate certain powers:

> However, a legislature may also try to delegate an administrative or executive power to a different branch of government. Administrative power is the power to administer or enforce a law, as opposed to the legislative power to make a law. The legislature does not need constitutional authority to delegate administrative power because it is not delegating a power reserved for its branch of government, such as the power to make a law. Thus, the separation of powers doctrine does not prevent a delegation of administrative power, even without constitutional authority for the delegation.

*Id.*

First of all, there is no such thing as administrative power. Like the federal constitution, the Kansas constitution speaks in terms of only three powers of government: the legislative power, the executive power, and the judicial power. *See generally* Kan. Const. These powers were well understood at the time the federal constitution was proposed in 1787, and their contours explained extensively during the debates regarding ratification of that instrument. *See, e.g.,* The Federalist Nos. 47, 48, 51 (James Madison), No. 78 (Alexander Hamilton). While several Kansas cases have spoken in terms of "administrative power," the court interprets the language in *Citizens' Utility* as equating administrative power to executive power. *Citizens' Util.*, 956 P.2d at 707 ("a legislature may try to delegate an administrative *or* executive power . . . . Administrative power is the power to administer *or enforce* a law . . . .") (emphasis added). By contrast, it is not intended to convey the notion of a fourth power of government that is distinct from the legislative, executive, and judicial powers.

The other point of confusion raised by *Citizens' Utility* is the suggestion that the legislature can delegate administrative or executive power to some other branch of government. *See id.* The legislature can only delegate that which it already possesses. *See Mistretta v. U.S.*, 488 U.S. 361, 382 (1989) ("For example, just as the Framers recognized the particular danger of the Legislative Branch's accreting to itself judicial or executive power, so too have we invalidated attempts by

11

Congress to exercise the responsibilities of other Branches or to reassign powers vested by the Constitution in either the Judicial Branch or the Executive Branch."). Under the Kansas constitution, the legislature is invested with the legislative power, not the executive power. *See* Kan. Const. art. 2, § 1. Nor does the legislature need to make any grant of executive power to ensure that the executive branch has the authority to enforce the laws. Instead, members of the executive branch are already vested with enforcement authority; they merely need the legislature to enact the law in the first instance. *See, e.g.,* Kan. Const. art. 1, § 3 (the governor "shall be responsible for the enforcement of the laws of this state"); *id.* art. 1, § 1 (identifying attorney general among the constitutional officers of the State of Kansas); K.S.A. § 75-702 (setting forth attorney general's duties with respect to enforcing and defending state laws). This extant executive power, already vested in the governor, and available to her officers and designees, stands ready to fulfill the executive's obligation to execute and enforce any duly enacted laws without any further delegation of executive power.

The point of this discussion about delegating executive power is to lay a foundation for addressing Plaintiffs' argument that K.S.A. § 20-172 represents a delegation of judicial power to the chief justice of the Kansas Supreme Court, (Doc. 22 at 4), an argument in support of which scant Kansas authority has been provided. Nevertheless, just as the legislature need not and cannot delegate executive power to the executive branch, it cannot and need not delegate judicial power to the judicial branch. Accordingly, the court concludes that the Kansas Supreme Court's reference in *Citizens' Utility* and other cases to the legislature's "delegation" of executive or administrative power to an executive officer or agency is better understood as an assignment by the legislature of the duties prescribed in a particular statute to a specific executive officer or agency, rather than a delegation of executive power to actually carry out the implementation and enforcement of the

12

statutory directives. In the same way, K.S.A. 20-172 cannot be construed as a delegation of judicial power to a judicial officer, but rather as an authorization for the state's chief justice to toll certain time limits, including statutes of limitations, when certain conditions are met and certain factual findings are made regarding the impact of the disaster on court personnel and court users.

Based on the foregoing, the remaining question before the court is whether K.S.A. 20-172 operates as an unconstitutional delegation of legislative power by the legislature to the chief justice of the Kansas Supreme Court under the separation of powers principles of the Kansas constitution. The relevant text of K.S.A. § 20-172 provides as follows:

> (a) Notwithstanding any other provisions of law, during any state of disaster emergency pursuant to K.S.A. 48-924, and amendments thereto, or any state of local disaster emergency established by K.S.A. 48-932, and amendments thereto, the chief justice of the Kansas supreme court may issue an order to extend or suspend any deadlines or time limitations established by statute . . . when the chief justice determines such action is necessary to secure the health and safety of court users, staff and judicial officers.
> . . . .
> (c) Any order issued pursuant to subsection (a) may remain in effect for up to 150 days after the applicable state of disaster emergency is terminated pursuant to K.S.A. 48-924, and amendments thereto, or state of local disaster emergency is terminated pursuant to K.S.A. 48-932, and amendments thereto. Any order in violation of this section shall be void.
> (d)(1) For a deadline or time limitation that was extended or suspended because of an order issued pursuant to subsection (a), on the date such order terminates, a person shall have the same number of days to comply with the deadline or time limitation as the person had when the deadline or time limitation was extended or suspended; and
> (2) for a deadline or time limitation that did not begin to run because of an order issued pursuant to subsection (a), on the date such order terminates, a person shall have the full period provided by law to comply with the deadline or time limitation.
> (e) The provisions of subsections (a) and (c) shall expire on June 30, 2022.

Distilled to its essence, the relevant portions of this statute authorize the chief justice to toll statutes of limitations only when an appropriate disaster has been declared and the chief justice determines that tolling limitations is necessary to protect the health and safety of the specified groups of people. Moreover, the duration of tolling is limited to 150 days beyond the end of the

13

disaster that triggered the tolling authority, and the chief justice's authority to order tolling expires on June 30, 2022.

Under Kansas law, "[i]f the legislature has included specific standards in a delegation, then it has already enacted the law," and it is simply instructing the officer, agency, or department of government charged with invoking or carrying out the law regarding things such as the conditions that must be met before the statute may be applied. *See Citizens' Util.*, 956 P.2d at 707. That is precisely the case here where the legislature carefully set forth the narrow, limited circumstances under which statutes of limitation might be tolled for a relatively short period of time, and leaves it to the chief justice to determine whether the potentially rapidly evolving conditions within the Kansas courts during an emergency are such that suspending or tolling deadlines such as those imposed by statutes of limitations is necessary to protect the health and safety of court personnel and members of the public who use the courts. This process is not terribly different from the sort of judicial fact-finding involved in determining when limitations begin to run, or when the running of limitations is tolled, under other Kansas statutes. *See, e.g.,* K.S.A. § 60-513(b) (limitations does not begin to run until fact of injury becomes reasonably ascertainable); K.S.A. § 60-515 (limitations period extended when persons under certain legal disabilities); K.S.A. § 60-517 (limitations tolled while defendant out of state or absconded). "While the legislature cannot delegate its constitutional power to make a law (Art. 2, Sec. 1, Kansas Constitution), it can make a law which delegates the power to determine some fact or state of things upon which such law shall become operative." *Colo. Interstate Gas Co. v. State Corp. Comm'n*, 192 Kan. 29, 37, 386 P.2d 288 (1963). In this case, the legislature established sufficient standards for the application of K.S.A. 20-172 that it does not operate as a delegation of legislative power, nor does it otherwise violate separation of powers principles. Accordingly, the court concludes that the Kansas Supreme

Court would likely reject a separation-of-powers challenge to its administrative orders under well-established principles of Kansas law. The administrative orders are appropriately applied, and they render Plaintiffs' claim timely under Kansas law.

### C. There is no need to certify questions of law presented here to the Kansas Supreme Court.

Once again, the court notes that this argument is presented for the first time in Defendant's reply and is deemed waived. *Harrell*, 642 F.3d at 918. But as Plaintiffs point out in their surreply (Doc. 22), this court follows the guiding principles of Kansas law which are well established. *Pino v. United States*, 507 F.3d 1233, 1235–36 (10th Cir. 2007). Based on the discussion herein, the court need not certify this question to resolve the matter at hand.

### IV. Conclusion

Defendant's motion to dismiss (Doc. 5.) is DENIED.

IT IS SO ORDERED. Dated this 26th day of September 2022.

                                                                                                                                                                                                                 s/ John W. Broomes
                                                                                                     JOHN W. BROOMES
                                                                                                     UNITED STATES DISTRICT JUDGE